1  **THE LAW OFFICES OF**
   **HOWARD W. RUBINSTEIN, P.A.**
2  Benjamin M. Lopatin, State Bar No. 281730
   lopatin@hwrlawoffice.com
3  One Embarcadero Center, Suite 500
   San Francisco, CA 94111
4  Telephone: (800) 436-6437
   Facsimile: (415) 692-6607
5
6  (Additional Counsel Appear on Signature Page)
7
   Attorneys for Plaintiff, GARETT KOEHLER,
8  and the Proposed Class
9
              **UNITED STATES DISTRICT COURT**
10            **NORTHERN DISTRICT OF CALIFORNIA**

11  **GARETT KOEHLER**, as an individual, and   Civil No.:
    on behalf of all others similarly situated,
12                                                **CV 13 2644**

13                                                **CLASS ACTION**

14                                                **COMPLAINT FOR:**

15         Plaintiff,                             1.  VIOLATIONS OF CALIFORNIA CIVIL
                                                      CODE §§ 1750, *ET SEQ* (CONSUMER
16                                                    LEGAL REMEDIES ACT)

17                                                2.  VIOLATIONS OF CALIFORNIA
                                                      BUSINESS & PROFESSIONS CODE
18                                                    §§ 17200, *ET SEQ*. (UNFAIR AND
                                                      FRAUDULENT PRONGS OF THE
19  vs.                                               UNFAIR COMPETITION LAW)

20                                                3.  VIOLATIONS OF CALIFORNIA
21                                                    BUSINESS & PROFESSIONS CODE
                                                      §§ 17200, *ET SEQ*. (UNLAWFUL
22  **PEPPERIDGE FARM, INC.**, a Connecticut        PRONG OF THE UNFAIR
    corporation, and DOES 1 to 100, inclusive,      COMPETITION LAW)
23
24                                                4.  VIOLATIONS OF CALIFORNIA
                                                      BUSINESS & PROFESSIONS CODE
25                                                    §§ 17500, *ET SEQ*. (FALSE
         Defendant.                                   ADVERTISING LAW)
26
27                                                **DEMAND FOR JURY TRIAL**
28

                                    CLASS ACTION COMPLAINT
                                    Page 1 of 25

Plaintiff GARETT KOEHLER ("Koehler" or "Plaintiff"), individually and on behalf of all other similarly situated purchasers of certain flavors of Pepperidge Farm's "Natural" Goldfish® Crackers, hereby brings this consumer class action against Pepperidge Farm, Inc., a Connecticut Corporation, and Does 1 to 100, inclusive (collectively, "Defendant" or "Pepperidge Farm") to challenge Defendant's violations of California state law and its unlawful and fraudulent business practices. Plaintiff seeks certification of this matter as a class action. Plaintiff, by and through his attorneys, submits this Complaint against Defendant, and alleges as follows:

## INTRODUCTION

1.      Pepperidge Farm markets, advertises, sells and distributes "Natural" Goldfish® Crackers (the "Products") to California purchasers in food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores and dollar stores. In marketing and advertising some Products, Defendant made and continues to make false and misleading claims regarding its representation that the Products are "Natural."

2.      Defendant markets the Products as "Natural" when, in fact, some flavors — for example, Cheddar — are not natural because they contain genetically modified ingredients (a/k/a genetically modified organisms, "GMOs," or "GMO ingredients") and/or other artificial ingredients or synthetic ingredients. Genetically modified soy, for example, is not "Natural" because it is grown from seeds that have been modified in a laboratory and/or DNA that would not normally be in the soy seeds. Thus, Defendant's "Natural" claims are false, misleading and likely to deceive reasonable consumers.

3.      Plaintiff brings this class action to stop Pepperidge Farm from including genetically modified ingredients or other artificial or synthetic ingredients in its "Natural" Goldfish Crackers products or, in the alternative, from representing the Products are "Natural" when they are not. Plaintiff also seeks to recover damages and restitution for Plaintiff and the Class.

4.     This is a class action for injunctive relief, restitution and damages against Pepperidge Farm for false and misleading advertising in violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, California's Unfair Competition Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

## VENUE AND JURISDICTION

5.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members of the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.

6.     This Court has jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, through promotion, sale, marketing and distribution of the Pepperidge Farm's "Natural" Goldfish Crackers in California, to render the exercise of jurisdiction by this Court proper and necessary.  Moreover, Defendant can be brought before this Court under California's "long-arm" jurisdictional statute.

7.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations establishing Plaintiff's claims occurred in this District, and Plaintiff resides in San Francisco, California.

8.     The "Declaration of Benjamin M. Lopatin Re: Venue Under Cal. Civil Code § 1780(d)" is being submitted herewith and is incorporated herein by reference.

## PARTIES

9.     Plaintiff Garrett Koehler is, and at all times relevant hereto was, a resident of San Francisco, California, who purchased the Products in California during the four (4) years prior to filing of this complaint (the "Class Period").  Plaintiff respectfully requests a jury trial. Plaintiff purchased various flavors of Pepperidge Farm's "Natural" Goldfish Crackers, including

1   but not limited to the cheddar flavored Products for personal use during the Class Period.

2   Plaintiff has purchased the Products in the Fall of 2012 from a Safeway supermarket in San

3   Francisco, California.

4        10.     In doing so, Plaintiff relied upon the advertising and other promotional material

5   prepared and approved by Defendant and its agents and disseminated through its labeling and

6   advertising media, containing the misrepresentation that the Products are "Natural." Plaintiff

7   understood Defendant's statement that the Products were "Natural" to mean that the Products

8   contained no GMO ingredients or other artificial or synthetic ingredients. Whether the Products

9   contained GMO ingredients or other artificial or synthetic ingredients and/or were "Natural"

10  affected the Plaintiff, and he did not know, or have any reason to know, the Products contained

11  GMO ingredients or other artificial or synthetic ingredients. If Plaintiff had known the Products

12  were not natural, he would not have purchased the Products, and he would not have paid a

13  premium price for them. Plaintiff had other alternatives that lacked such GMO ingredients and

14  other artificial or synthetic ingredients. Plaintiff also had cheaper alternatives.

15       11.     Defendant Pepperidge Farm, Inc. is a Connecticut-licensed corporation with its

16  principal place of business at 595 Westport Ave, Norwalk, Connecticut 06856.  Pepperidge

17  Farm lists with the California Secretary of State a registered agent for service of process in

18  California as:  CT Corporation System, 818 West Seventh Street, Los Angeles, California

19  90017. Pepperidge Farm can be considered a "citizen" of Connecticut for diversity jurisdiction

20  or diversity of citizenship.  Defendant, directly and through its agents, has substantial contacts

21  with and receives substantial benefits and income and through California. Directly and through

22  its retailers, distributors and agents, Defendant has substantial contacts with, and receives

23  benefits and income from and through, California.

24       12.     Defendant is the owner, manufacturer and distributor of the Products and is the

25  company that created and/or authorized the false, misleading and deceptive labeling and

26  advertising for the Products.

27

28

13.   Plaintiff alleges that, at all times relevant herein, Defendant and its subsidiaries, affiliates and other related entities, as well as their respective employees, were the agents, servants and employees of Defendant, and, at all times relevant herein, each was acting within the purpose and scope of that agency and employment. Plaintiff further alleges that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were Defendant's agents, servants and employees, and, at all times herein, each was acting within the purpose and scope of that agency and employment.

14.   Plaintiff alleges that, in committing the wrongful acts alleged, Defendant, in concert with its subsidiaries, affiliates and/or other related entities, as well as their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products with false, misleading, deceptive and fraudulent representations and that Defendant participated in making such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

15.   Whenever referring to any act by Defendant or its subsidiaries, affiliates, distributors, retailers or other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed that act or transaction for Defendant while engaged in the scope of his or her duties.

16.   Defendant, upon becoming involved with the manufacture, distribution, advertising, marketing and sale of the Products, knew or should have known that the claims about the Products, including the claims the Products are "Natural," were false, deceptive and misleading. Defendant also knew or should have known that the Products contain, and continue to contain, ingredients that have grown from seeds that were genetically modified in laboratories (in other words, that the ingredients are GMOs) and/or other artificial or synthetic ingredients. Defendant affirmatively misrepresented, and continues to misrepresent, the uses and benefits of the Products to convince the public to purchase and use the Products, resulting in millions of dollars in profits to Defendant and significant detriment to the consuming public.

**FACTUAL ALLEGATIONS**

**A.     BACKGROUND**

    1)     <u>Genetically Modified Ingredients are Not "Natural"</u>

    17.     The term "genetic modification" is recognized in "common usage and in national and international laws to refer to the use of recombinant DNA transfer techniques to transfer genetic material between organisms in a way that would not take place naturally, bringing about alterations in genetic makeup and properties." Michael Antoniou, Claire Robinson, & John Fagan, Earth Open Source, *GMO Myths & Truths: An Evidence-Based Examination of the Claims Made for the Safety and Efficacy of Genetically Modified Crops* 10 (June 2012) ("GMO Myths & Truths"), (*available at* http://earthopensource.org/files/pdfs/GMO_Myths_and_Truths/ GMO_Myths_and_Truths_1.3b.pdf ).

    18.     The term "biotechnology" is "an umbrella term that includes a variety of processes in which biological functions are harnessed for various purposes." *Id.*

    19.     Genetically modified organisms ("GMOs") are plants that grow from seeds that have been modified in a laboratory through the genetic modification process. The experimental technology of genetic modification merges DNA from different species, creating unstable combinations of plant, animal, bacterial and viral genes that cannot occur in nature or in traditional crossbreeding. *See* Non-GMO Project, *GMO FACTS: Frequently Asked Questions*, http://www.nongmoproject.org/learn-more/.

    20.     Thus, genetic modification differs completely from natural breeding because natural breeding can only take place between closely related forms of life, and genetic modification is a laboratory-based technique.

    21.     Furthermore, the unnatural process of inserting a genetically modified gene into the DNA of a plant cell is "crude, uncontrolled, and imprecise, and causes mutations – heritable changes – the plant's DNA blueprint." GMO Myths & Truths at 11 (citation omitted). During the genetic modification process, "unintended, uncontrolled mutations occur" and "complex interactions occur at multiple levels within the organism as a result of the insertion of even a

single new gene." *Id.* The "unintended changes could include alterations in the nutritional content of the food, toxic and allergenic effects, poor crop performance and generation of characteristics that harm the environment." *Id.* In contrast, "mutations occur infrequently in nature." *Id.* at 16 (citation omitted).

22.   Since genetic engineering "is an artificial laboratory procedure that forcibly introduces foreign DNA into the cells of a plant[,]" *id.* at 18, the resulting GMO, and any food incorporating GMOs, cannot be considered "natural."

23.   No reliable, scientific studies guarantee or show any evidence of long term safety of GMOs for human consumption.

### (3)   Increased Concern Over GMOs

24.   There is an increasing concern amongst health experts and consumers alike that introducing foreign genes into food plants may have unexpected and negative impacts on human health, such as creating new allergens, causing allergic reactions in susceptible individuals, and causing digestive issues. The concerns about GMOs fall into three categories: environmental hazards, human health risks and economic concerns. Some concerns for human health risks associated with GMOs include, but are not limited to, the possibility that introducing a new gene into a plant may create a new allergen, cause an allergic reaction in susceptible individuals or have an unexpected and negative impact on overall human health.

25.   Polls taken by the Pew Center, Consumers Union, Harris Interactive, the Huffington Post and ABC over the last decade that have consistently found that the vast majority of Americans would like to see genetically modified foods better regulated and labeled. *See* Monica Eng, *Debate rages over labeling biotech foods; Industry resists listing genetically modified ingredients; consumer worries continue*, L.A. Times, June 2, 2011, at B4; Center for Food Safety, *U.S. Polls on GE Food Labeling*, http://www.centerforfoodsafety.org/issues/976/ ge-food-labeling/us-polls-on-ge-food-labeling.

26.   Legislation requiring the labeling of GMOs has been proposed in more than a dozen states since 2011. *See* Harmon & Pollack, *Battle Brewing Over Labeling of Genetically*

*Modified Food*, N.Y. Times, Science, May 24, 2012, *available at* http://www.nytimes.com/ 2012/05/25/science/dispute-over-labeling-of-genetically-modified-food.html.  During California's November 2012 election, the passage of Proposition 37 would have prohibited retailers and food companies from labeling or advertising of food as "natural" if made from GMOs. *See* Yes on 37 For Your Right to Know if Your Food Has Been Genetically Engineered, *Facts – Yes on Prop 37*, http://www.carighttoknow.org/facts. Although Proposition 37 did not pass, 47.2% of California voters voted in favor of the proposition, and labeling of genetically modified food continues to be an important consideration for California consumers when purchasing food products.

27.    Recently, Whole Foods Market announced that by 2018, all products in its U.S. stores must be labeled if they contain GMOs. *See* Press Release, Whole Foods Market, *Whole Foods Market© commits to full GMO transparency* (Mar. 8, 2013), *available at* http://www.prnewswire.com/news-releases/whole-foods-market-commits-to-full-gmo-transparency-196327171.html. Whole Foods is the first national grocery store, to date, to set a deadline for GMO labeling.

28.    Most recently, on June 3, 2013, Connecticut, where Defendant's headquarters is located, approved a law requiring the labeling of genetically modified foods. *See* Stephanie Strom, *Connecticut Approves Genetic Labeling*, N.Y. Times, June 4, 2013, at B4.

29.    Clearly, whether a packaged food item labeled "Natural" contains genetically modified ingredients is a material question to a reasonable consumer.

(4)    **By Definition, Artificial and Synthetic Substances Are Unnatural**

30.    "Artificial" means "[m]ade or produced by a human or human intervention *rather than by nature.*" Black's Law Dictionary (2009).

31.    "Synthetic" means "of, relating to, or produced by chemical or biochemical synthesis; especially : produced artificially." http://www.merriam-webster.com/dictionary/synthetic.

32.     Therefore, substances that are artificial or synthetic are, by definition, *not* natural, and reasonable consumers reasonably do not expect food labeled as "natural" or "Natural" to include artificial or synthetic substances.

**B.     PEPPERIDGE FARM'S ADVERTISING AND LABELING OF ITS GOLDFISH NATURAL CRACKERS PRODUCTS**

33.     Defendant manufactures, distributes and markets a variety of pre-made snack products, such as Goldfish crackers.  Within the last several years, Defendant entered into the lucrative, multi-billion dollar per year "natural" or "healthy" food market with its Pepperidge Farm "Natural" line of Goldfish crackers. Some of these flavors, however, are not "Natural" because, for example, the Cheddar-flavor Products contain genetically modified soy in the form of soybean oil, as well as the following ingredients, which, upon information and belief, were each synthetically produced:  thiamine mononitrate ("vitamin B1"), riboflavin ("vitamin B2"), folic acid and leavening (monocalcium phosphate and ammonium bicarbonate baking soda).

34.     All of the Products contain GMO soy ingredients and/or other artificial or synthetic ingredients. Since the seeds from which the soy ingredients have been genetically modified to add or include additional genes and/or DNA, the soy ingredients and the Products themselves are, therefore, not "Natural."

35.     During the Class Period, Defendant has claimed, and continues to claim, in its advertising and marketing of the Products that the Products are "Natural." Each Product's label states, in large bold lettering in the bottom left-hand corner of the Products' packaging, that it is "Natural." *See* **Exhibit** 1, attached hereto and incorporated herein, *true and correct representation of similar packaging purchased by the Plaintiff.*

36.     However, upon information and belief, Plaintiff alleges that Defendant, prior to Plaintiff's and the putative Class Members' suffering the damages described herein, changed the Products' packaging and labeling to remove the "Natural" statement. *See* **Exhibit** 2, attached hereto and incorporated herein, *true and correct representation of current packaging for Cheddar Goldfish crackers.*  Plaintiff submits this evidence as an implied admission that the

1    Products were not natural at all material times hereto when the Plaintiff and putative Class

2    Members purchased the Products that claimed to be "Natural" and no longer make said claim.

3          37.    All Consumers who purchased the Products were exposed to the same "Natural"

4    claim. Unfortunately for consumers, they were charged a premium for these alleged "Natural"

5    products. Defendant's advertising and labeling was misleading and likely to deceive the average

6    customer during the Class Period.

7          38.    Defendant's "Natural" representations convey a series of express and implied

8    claims which Defendant knows are material to the reasonable consumer and which Defendant

9    intend for consumers to rely upon when purchasing its products. The advertising and marketing

10   for the Pepperidge Farm's Goldfish "Natural" Crackers creates the uniform, false and

11   misleading impression that the Products are comprised of only Natural ingredients. Defendant

12   then charged a premium for crackers that were not natural but that contained the same

13   genetically modified ingredients contained in its other crackers varieties. There is nothing

14   natural about genetically modified food.

15         39.    Thus, Defendant's "Natural" statement prominently displayed on the Products'

16   packaging is false, misleading and likely to deceive reasonable consumers, such as Plaintiff and

17   members of the Class, because the Products are not natural due to the presence of GMO soy

18   and/or other artificial or synthetic ingredients. The Products are not natural because a genetical-

19   ly modified soy product contains genes and/or DNA that would not normally be in it.

20         40.    Consumers such as Plaintiff expect that products labeled "Natural" will be just

21   that. To be natural, a food should contain no artificial or synthetic ingredients, and both it and its

22   ingredients should have no more processing that something which could be made in a household

23   kitchen. The average consumer cannot create a genetically modified organism, nor insert or

24   change a plant seed's DNA, in his or her own household kitchen. Clearly, an organism that has

25   undergone sophisticated bioengineering can no longer be considered minimally processed or

26   "Natural."

27

28

## C.   RELIANCE ON PEPPERIDGE FARM'S "NATURAL" CLAIM IS REASONABLE

41.     Reasonable consumers understand the term "natural" on a food label to mean that none of the product's ingredients are synthetic, artificial or modified in a laboratory.

42.     Consumers, including Plaintiff, lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "Natural" at the point of sale. Consumers would not know the true nature of the ingredients merely by reason the ingredient label; its discovery requires investigation beyond the grocery store. Thus, reasonable consumers must and do rely on food companies such as Pepperidge Farm to honestly report the nature of a food's ingredients, and food companies such as Pepperidge Farm intend and know that consumers rely upon food labeling statements in making his purchasing decisions.

43.     Pepperidge Farm knew that it made the "Natural" representations in regard to the Products, as this statement appears on each of the Products' labels. Pepperidge Farm also knew that these claims were false and misleading because it knew the soy ingredient was synthetic and/or artificial, in part, because it was grown from genetically modified seeds and was thus not natural.

44.     Plaintiff, Garrett Koehler, during the Fall of 2012, purchased Pepperidge Farm's Cheddar Goldfish crackers from a Safeway supermarket located in San Francisco, California. In doing so, Mr. Koehler relied upon the advertising containing the misrepresentations contained herein, which was prepared and approved by Defendant and its agents and disseminated through its labeling of the Products. Mr. Koehler believed the representation on the label that the Goldfish crackers were "Natural" and thus the crackers did not contain, nor were he made with, any genetically modified ingredients or other artificial or synthetic ingredients. If Mr. Koehler had known the crackers he purchased contained GMOs and/or other artificial or synthetic ingredients and, thus, were not natural, he would not have purchased them.

45.     Plaintiff read the labels on the Products, including the "Natural" claims, before purchasing the Products.  Plaintiff reasonably relied upon the advertising and other promotional

material which were prepared and approved by Defendant and its agents and disseminated through its labeling and advertising media, containing the misrepresentation that the Products were "Natural." Plaintiff understood Defendant's statement that the Products were "Natural" to mean they did not contain any GMO ingredients or other artificial or synthetic ingredients.

46.     At the point of sale, Plaintiff did not know, and had no reason to know, that the Products were not natural.

47.     Whether the Products contained GMO ingredients or other artificial or synthetic ingredients was important to the Plaintiff. If Plaintiff had known the Products contained GMO ingredients or other artificial or synthetic ingredients and, thus, were not natural, he would not have purchased the Products and would not have paid a premium price for them. Indeed, Plaintiff had other alternatives that lacked such GMO ingredients and other artificial or synthetic ingredients, and Plaintiff also had cheaper alternatives, including Defendant's other crackers product lines.

48.     After Plaintiff learned that the Products were falsely labeled, he stopped purchasing them.

49.     Plaintiff and members of the Class lost money or property and have been economically damaged by their purchases of the Products because the Products were not natural.

50.     Defendant has made, and continues to make, "natural" food label claims that are prohibited by California law. Under California law, Defendant's Products cannot legally be manufactured, advertised, distributed, held or sold. Defendant's false and misleading labeling practices stem from its global marketing strategy. Thus, the violations and misrepresentations are similar across product labels and product lines.

51.     Defendant's labeling, advertising and marketing as alleged herein is false and misleading and designed to increase sales of the Products. Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's representations in determining whether to purchase the products at issue.

52.   Defendant should cease advertising products as "Natural" when they contain genetically modified ingredients or other artificial or synthetic ingredients.

## CLASS ACTION ALLEGATIONS

53.   Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

54.   Pursuant to Cal. Civ. Code § 1781 and Fed. R. Civ. P. 23, Plaintiff brings this class action and seek certification of the claims and certain issues in this action on behalf of a "Class" defined as:

> **All California persons who have purchased, for personal use,**
> **Pepperidge Farm's Goldfish crackers that contain genetically**
> **modified soy since June 2009.**

Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries and assigns.  Also excluded from the Class is any judge, justice or judicial officer presiding over this matter and any members of his or her immediate family and judicial staff. Plaintiff reserves the right to amend the Class definition if further information and discovery indicates that the Class definition should be narrowed, expanded or otherwise modified.

55.   This action is maintainable as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

56.   **Numerosity**: The Class comprises many thousands of persons throughout the State of California. The Class is so numerous that joinder of all members is impracticable, and the disposition of Class members' claims in a Class Action will benefit the parties and the Court.

57.   **Commonality**:  The questions of law and fact common to the Class have the capacity to generate common answers that will drive resolution of this action. Common questions of law and fact include, but are not limited to, the following:

a.   Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products in California were unfair, deceptive, fraudulent and/or unlawful in any respect, thereby violating Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

b.   Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products in California were unfair, deceptive and/or unlawful in any respect, thereby violating Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

c.   Whether Defendant violated Cal. Civ. Code §§ 1750, *et seq.* with its practices and representations related to the marketing, labeling and sales of the Products within California;

d.   Whether the Products are "Natural";

e.   Whether the ingredients contained in the Products are "Natural";

f.   Whether the claim "Natural" on the Products' labels and advertising is material to a reasonable consumer;

g.   Whether a reasonable consumer is likely to be deceived by a claim that a product is "Natural" where the product contains or is made from genetically modified ingredients or other artificial or synthetic ingredients;

h.   Whether Defendant's unlawful, unfair and/or deceptive conduct harmed Plaintiff and the Class and, if so, the extent of the injuries; and,

i.   Whether Defendant was unjustly enriched by its deceptive practices.

58.   **Typicality:** Plaintiff's claims and Defendant's defenses thereto are typical of the claims of the Class, as the representations made by Defendant are consistent and uniform and are contained in the advertisements and labels that every member of the Class was necessarily exposed to in purchasing the Products. Thus, there exists a presumption that all Class members relied upon said uniform and consistent advertising and representations to his detriment.

1   Additionally, all members of the Class have the same or similar injury (loss of purchase price)

2   based on Defendant's false and misleading marketing and advertising.

3       59.    **Adequacy:** Plaintiff does not have any conflicts with any other members of the

4   Class and will fairly and adequately represent and protect the interests of the members of the

5   Plaintiff Class. Plaintiff has retained counsel competent and experienced in both consumer

6   protection and class action litigation.

7       60.    **Predominance:** As set forth in detail herein, common issues of fact and law

8   predominate because all of Plaintiff's UCL, FAL and CLRA claims are based on a uniform false

9   and misleading advertising message which all class members were necessarily exposed to:

10  namely, that Products are in fact "Natural."

11      61.    **Superiority:**  A class action is superior to other available methods for fair and

12  efficient adjudication of this controversy.  The expense and burden of individual litigation

13  would make it impracticable or impossible for Class members to prosecute their claims

14  individually. Absent a class action, Defendant will likely retain the benefits of its wrongdoing.

15  Because of the small size of the individual Class members' claims, few, if any, Class members

16  could afford to seek legal redress for the wrongs complained of herein. Absent a representative

17  action, the Class members will continue to suffer losses and Defendant will be allowed to

18  continue these violations of law and to retain the proceeds of its ill-gotten gains. The trial and

19  litigation of Plaintiff's claims are manageable.  Individual litigation of the legal and factual

20  issues raised by Defendant's conduct would increase delay and expense to all parties and the

21  court system.  The class action device presents far fewer management difficulties and provides

22  the benefits of a single, uniform adjudication, economies of scale and comprehensive

23  supervision by a single court. The benefits of proceeding as a class action, including providing

24  a method for obtaining redress for claims that would not be practical to pursue individually,

25  outweigh any difficulties that might be argued with regard to the management of this class

26  action.

27

28

## FIRST CAUSE OF ACTION:

## FOR VIOLATIONS OF CAL. CIV. CODE §§ 1750, *ET SEQ.*

### (By Plaintiff and the Proposed Class Against Defendant)

62.     Plaintiff re-alleges and incorporates by reference the allegations set forth above, and incorporates the same as if set forth at length.

63.     This cause of action is brought pursuant to Cal. Civ. Code §§ 1750, *et seq.*, on behalf of Plaintiff and the Class, consisting of all California residents who purchased at least one of the Products for personal use and not for resale since June 2009.

64.     Plaintiff is an individual who purchased the Products for personal, family or household purposes.

65.     The purchases of the Products by Plaintiff and California purchasers of the Products were and are "transactions" within the meaning of Cal. Civ. Code §1761(e).

66.     Defendant's marketing, labeling and advertising and sales of the Products within California that misleadingly claim the Products were "Natural" violated the CLRA in at least the following respects as set forth in detail above:

   a.  In violation of Cal. Civ. Code §1770(a)(5), Defendant represented that the Products have characteristics, ingredients, uses and benefits which they do not have;

   b.  In violation of Cal. Civ. Code §1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade which they are not.

   c.  In violation of Cal. Civ. Code §1770(a)(9), Defendant advertised the Products with an intent not to sell the Products as advertised; and,

   d.  In violation of Cal. Civ. Code §1770(a)(16), Defendant represented that the subject of the sale of the Products has been supplied in accordance with a previous representation when it has not.

67.     Defendant knew or should have known that the Products were not natural.

68.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of same.

69.     Defendant's wrongful business practices constitute a continuing course of conduct in violation of the CLRA since Defendant has not been estopped from representing that the Products have characteristics and abilities which they do not have, and, thus, Defendant's wrongful conduct is an ongoing threat to Plaintiff and the Class.

70.     Plaintiff and other members of the Class have suffered injury in fact and have lost money as a result of Defendant's false representations.  Indeed, Plaintiff and other members of the Class purchased the Products because they believed the Products were Natural.  Plaintiff and other Class members would not have purchased the Products if they had known the Pepperidge Farm crackers contained GMOs or other artificial or synthetic ingredients and, thus, were not natural.

71.     On or about April 26, 2013, Defendant was notified in writing of the particular violations of Section 1770 of the CLRA alleged by Plaintiff on behalf of himself and a putative Class of similarly situated purchasers in the State of California, and Plaintiff thereby demanded that Defendant take certain corrective actions within the time proscribed by the CLRA for such demands.  Defendant failed to adequately respond within the thirty (30) day time period. Plaintiff now seeks an award of restitution, actual damages and punitive damages in accordance with Cal. Civ. Code § 1782(a) & (d).

72.     Plaintiff also seeks damages and is entitled to equitable relief in the form of an order requiring Defendant to make full restitution to California purchasers of the Products of all monies wrongfully obtained as a result of the conduct described above.

73.     Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use or employ its current advertising and marketing tactics to sell the Products, as described above.  Specifically, Plaintiff seeks an order stopping Defendant from representing the Products are "Natural" when they are not.[1]  This may include,

---

[1] Defendant may have already begun this process as evidenced by **Exhibit 2**; however, a Court Order will ensure that it is properly adhered to and not merely voluntary.

1  but is not limited to, an order from the Court that Defendant remove the "Natural" claims from

2  its packaging and advertising, or that Defendant remove any GMO ingredients and other

3  artificial or synthetic ingredients from the Products. Plaintiff also requests an order awarding

4  Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of

5  Defendant's false and misleading representations.

6  <center>**SECOND CAUSE OF ACTION:**</center>

7  <center>**UNFAIR AND FRAUDULENT BUSINESS PRACTICES**</center>

8  <center>**IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 _ET SEQ._**</center>

9  <center>**(By Plaintiff and the Proposed Class Against Defendant)**</center>

10  74.    Plaintiff re-alleges and incorporate by reference the allegations set forth above,

11  and incorporates the same as if set forth at length.

12  75.    This cause of action is brought pursuant to the "unfair" and "fraudulent" prongs

13  Cal. Bus. & Prof. Code §§ 17200, _et seq._ on behalf of Plaintiff and a Class consisting of all

14  California purchasers of the Products for personal use and not for resale since June 2009.

15  76.    As alleged above, Plaintiff has standing to pursue this claim because Plaintiff has

16  suffered injury in fact and have lost money or property as a result of Defendant's actions as set

17  forth herein. Specifically, prior to the filing of this action, Plaintiff purchased the Products for

18  his own personal use. In so doing, he relied upon the false representations in Defendant's

19  advertising and labeling that the Products are "Natural." The products were not natural and

20  were, therefore, useless to Plaintiff in that he would not have purchased the Products had he

21  known he were not natural.

22  77.    In its marketing and advertising, Defendant makes false and misleading

23  statements regarding the uses and benefits of the Products, namely that they are "Natural."

24  78.    However, the Products are not natural because they contain genetically modified

25  soy and other artificial or synthetic ingredients.

26  79.    Defendant is aware that the "Natural" claim it made about the Products was false

27  and misleading.

28

80.     The misrepresentations by Defendant are material facts and constitute an unfair and fraudulent business practice within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

81.     Defendant's business practices, as alleged herein, are unfair and fraudulent because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the information because Defendant intentionally mislead the consuming public by means of the claims made with respect to the Products as set forth herein.

82.     Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that the Products have uses and benefits that they do not have.

83.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising and an unlawful business practice within the meaning of Bus. & Prof. Code §§17200, *et seq.*

84.     Defendant's wrongful business practices constitute a continuing course of conduct of unfair competition since Defendant has not been estopped from marketing and selling the Products in a manner likely to deceive the public.

85.     Defendant has peddled, and continues to peddle, its misrepresentations through the Products' packaging, marketing and advertising.

86.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

87.     Plaintiff and the other Class members were misled into purchasing the Products by Defendant's deceptive conduct as alleged above.

88.     Plaintiff and the other Class members were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that the Products were natural.

89.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff and the other members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use or employ its current advertising and marketing tactics to sell the Products, as described above. Specifically, Plaintiff seeks an order stopping Defendant from representing the Products are "Natural" when they are not.[2] This may include, but is not limited to, an order from the Court that Defendant remove the "Natural" claims from its packaging and advertising or that Defendant remove the GMO ingredients and other artificial or synthetic ingredients from the Products. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's false and misleading representations.

90.     Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false and misleading representations.  Indeed, Plaintiff purchased the Products in reliance on Defendant's false and misleading claims placed on the labels of these Products.  Plaintiff would not have purchased the Products if he had known the "Natural" claim was false.

## THIRD CAUSE OF ACTION:

## UNLAWFUL BUSINESS PRACTICES

## IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*

### (By Plaintiff and the Proposed Class Against Defendant)

91.     Plaintiff re-alleges and incorporate by reference the allegations set forth above, and incorporates the same as if set forth at length.

92.     This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to the "unlawful" prong of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, on behalf of Plaintiff and a Class consisting of all persons residing in the State of California who purchased the Products for personal use and not for resale since June 2009.

93.     As alleged above, Plaintiff have standing to pursue this claim as Plaintiff has suffered injury in fact and have lost money or property as a result of Defendant's actions as set

---

[2] *See, supra,* note 1.

forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Products for his own personal use.  In so doing, he relied upon the false representations in Defendant's advertising and labeling that the Products were "Natural."  The Products were not natural and were useless to Plaintiff, and he would not have purchased the Products if he had known they were not natural.

94.     In its marketing and advertising, Defendant made false and misleading statements regarding the characteristics, uses and benefits of the Products, namely that they were "Natural."

95.     The Products were not Natural because they contained genetically modified soy and/or soy derivatives and/or other artificial or synthetic ingredients.

96.     Defendant was aware that the claims that it made about the Products were false and misleading.

97.     The misrepresentations by Defendant are material facts and constitute an unlawful business practice.

98.     Defendant's business practices, as alleged herein, are unlawful because they violate: (1) sections 1770(a)(5), 1770(a)(7), 1770(a)(9) and 1770(a)(16) of the CLRA, Cal. Civ. Code §§ 1750, et seq.; (2) the Sherman Act, Cal. Health & Safety Code §§110100, et seq.; and, (2) the FAL, Cal. Bus. & Prof. Code §§ 17500, et seq.

99.     Plaintiff and the other Class members were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that the Products were natural.

100.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the other members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use or employ its current advertising and marketing tactics to sell the Products, as described above. Specifically, Plaintiff seeks an order stopping Defendant from representing the Products are "Natural" when they are not.[3]  This may include, but is not limited to, an order from the Court

---

[3] See, supra, note 1.

that Defendant remove the "Natural" claims from its packaging and advertising or that Defendant remove the GMO ingredients and other artificial or synthetic ingredients from the Products. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's false and misleading representations.

101.   Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false and misleading representations.  Indeed, Plaintiff purchased the Products in reliance on Defendant's false and misleading claims placed on the labels of these Products.  Plaintiff would not have purchased the Products if he had known the "Natural" claim was false.

## FOURTH CAUSE OF ACTION:

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*

### (By Plaintiff and the Proposed Class Against Defendant)

102.   Plaintiff re-alleges and incorporates by reference the allegations set forth above, and incorporates the same as if set forth at length.

103.   This cause of action is brought pursuant to Cal. Bus. & Prof. Code §§ 17500, *et seq.*, on behalf of Plaintiff and a Class consisting of all persons residing in the State of California who purchased the Products for personal use and not for resale since June 2009.

104.   Bus. & Prof. Code § 17500 provides that it is unlawful for any person or corporation, or any employee thereof "with intent directly or indirectly to dispose of real or personal property ... or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property... or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or

misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading..."

105.   In its advertising and labeling of the Products, Defendant made false and misleading statements that the Products were "Natural."

106.   Defendant engaged in the deceptive conduct alleged above, which included deceptive and untrue representations regarding the Products, made to induce the public to purchase the Products.

107.   In its marketing and advertising, Defendant made knowingly false and misleading statements regarding the ingredients, characteristics, uses and benefits of the Products.

108.   Defendant was aware that the claims that it made about the Products were false and misleading.

109.   In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise, which were not as represented in any manner, constituted unfair competition, unfair, deceptive, untrue or misleading advertising and an unlawful business practice within the meaning of Bus. & Prof. Code §§ 17200, *et seq.*

110.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

111.   Plaintiff and the other Class members were misled into purchasing the Products by Defendant's deceptive conduct as alleged above.

112.   Plaintiff and the other Class members were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that the Products were natural.

113.   Pursuant to Bus. & Prof. Code §§ 17203 and 17535, Plaintiff and the other members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use or employ its current advertising and marketing tactics to sell the Products, as

described above.  Specifically, Plaintiff seeks an order stopping Defendant from representing the Products are "Natural" when they are not.[4] This may include, but is not limited to, an order from the Court that Defendant remove the "Natural" claims from its packaging and advertising or that Defendant remove the GMO ingredients and other artificial or synthetic ingredients from the Products. Plaintiff also requests an order awarding him and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's false and misleading representations.

114.    Plaintiff has suffered injury in fact and has lost money as a result of Defendant's false and misleading representations.  Indeed, Plaintiff purchased the Products in reliance on Defendant's false and misleading claims placed on the labels of these Products.  Plaintiff would not have purchased the Products if he had known the "Natural" claim was false.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

A.    For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representatives of the Class and designating his attorneys as Class counsel.

B.    For an order enjoining Defendant from pursuing the policies, acts and practices complained of herein;

C.    An order requiring Defendant to pay restitution to Plaintiff and all members of the Class;

D.    For actual damages in an amount to be determined at trial;

E.    For statutory damages;

F.    For punitive damages;

G.    For reasonable attorneys' fees;

H.    For costs of this suit;

I.    For pre- and post-judgment interest on any amounts awarded; and

---

[4] *See, supra*, note 1.

1     J.     Providing such further relief as may be just and proper.

2

3                **Respectfully Submitted,**

4   **Dated: June 6, 2013**     **THE LAW OFFICES OF HOWARD W. RUBINSTEIN, P.A.**

5                By:    */s/  Benjamin M. Lopatin*

6                      Benjamin M. Lopatin

7                  - and -

8

9                **REESE RICHMAN LLP**
Michael R. Reese, State Bar No. 206773

10              *mreese@reeserichman.com*
875 Avenue of the Americas, 18th Floor

11              New York, New York 10001
Telephone:   (212) 643-0500

12              Facsimile:    (212) 253-4272

13              Attorneys for Plaintiff Garrett Koehler and the Proposed Class

14

15                  **JURY DEMAND**

16    Plaintiff respectfully demands a trial by jury on all issues so triable.

17   **Dated: June 6, 2013**     **THE LAW OFFICES OF HOWARD W. RUBINSTEIN, P.A.**

18

19                By: */s/  Benjamin M. Lopatin*
                     Benjamin M. Lopatin

20                  - and -

21

22              **REESE RICHMAN LLP**
Michael R. Reese, State Bar No. 206773

23             *mreese@reeserichman.com*
875 Avenue of the Americas, 18th Floor

24             New York, New York 10001
Telephone:   (212) 643-0500

25             Facsimile:    (212) 253-4272

26

27             Attorneys for Plaintiff Garrett Koehler and the Proposed Class

28

# EXHIBIT

# 1

BAKER LAW PC
CONSUMER CLASS LITIGATION

G. Richard Baker
Attorney

2229 1st Avenue North
Birmingham, Alabama 35203
205.241.9608
205.449.0050 (fax)
Richard@Bakerlawpc.com

October 20, 2010

Honorable Jeremy Fogel
United States District Court for the
Northern District of California
280 South 1ˢᵗ Street
San Jose, CA 95113

RE:   *Lauren Ries and Serena Algozer, et al v. Hornell Brewing Company, Inc., et al*
      **In the United States District Court for the Northern District of California**
      **San Jose Division**
      **Civil Action No.:      10-CV-01139-JF**

Dear Judge Fogel:

This firm represents the Plaintiffs in the above referenced matter.  With respect to the matter captioned *Coyle v. Hornell Brewing Co., Inc., et al.*, enclosed is a courtesy copy of an *Order* entered lifting the stay previously entered in the *Coyle* case, which was the basis for the stay in the *Lauren Ries* and *Serena Algozer* case.

Sincerely,

G. Richard Baker

GRB/sdt

Attachments

Cc:    Kevin J. Dunne, Esq.
       Andrew J. King, Esq.
       Robert P. Donovan, Esq.
       Lewis H. Goldfarb, Esq.
       Kevin P. Roddy, Esq.
       Daniel R. Lapinski, Esq.
       Joseph L. "Josh" Tucker, Esq.
       David D. Lilienstein, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAUREN COYLE, *on behalf of herself and all those similarly situated,* | : | |
| Plaintiff, | : | Civil No. 08-2797 (JBS) |
| | : | ORDER LIFTING STAY |
| v. | : | |
| HORNELL BREWING CO., et al., | : | |
| Defendants. | : | |

The Court hereby advises all counsel of the receipt of the attached letter dated September 16, 2010, received September 21, 2010, from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition, U.S. Food and Drug Administration, declining to provide an FDA determination of the question whether high fructose corn syrup qualifies as a "natural" ingredient. This Court had referred this issue to the FDA pursuant to the Order of June 1, 2010 [Docket Item 115] and the Order of June 25, 2010 [Docket Item 118], and had stayed this litigation for six (6) months pending this referral.

It now appears that the stay should be lifted so that the case may proceed, and the Plaintiff's remaining claims may be prosecuted and that a schedule should be set for the reinstatement of Plaintiff's motion for class certification [Docket Item 108] and for briefing and hearing of that motion;

and for these purposes a short scheduling conference will be convened by telephone on Wednesday, September 29, 2010 at 10:00 A.M.;

IT IS, this __23rd__ day of **September**, 2010, hereby

ORDERED that the temporary stay of litigation from June 25, 2010 will be dissolved and the case may proceed; and it is further

ORDERED that the Court will convene a telephone scheduling conference of all counsel on **Wednesday, September 29, 2010 at 10:00 A.M.**, and Plaintiff's counsel is requested to arrange for the telephone conference call at that time.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

Food and Drug Administration
College Park, MD 20740

SEP 1 6 2010

The Honorable Jerome B. Simandle
U.S. District Judge
United States Courthouse
One John F. Gerry Plaza
P.O. Box 888
Camden, New Jersey 08101

RECEIVED

SEP 2 1 2010

JEROME B. SIMANDLE
U.S DISTRICT JUDGE

      Re: <u>Coyle v. Hornell Brewing Co., Inc., et al.</u>
           Civil Number 08-2797 (JBS-JS)

Dear Judge Simandle:

This is in response to your letter dated June 25, 2010, referring to the Food and Drug Administration ("FDA") for an administrative determination under 21 C.F.R. 10.25(c) the question of whether high fructose corn syrup ("HFCS") qualifies as a "natural" ingredient. For the reasons explained below, we respectfully decline to provide such a determination.

First, for the FDA to resolve whether HFCS qualifies as a "natural" ingredient in defendants' beverages, in the absence of a pre-existing regulatory definition, the agency would expect to act in a transparent manner by engaging in a public proceeding to establish the meaning of this term. Given the issues involved, making such a determination without adequate public participation would raise questions about the fairness of FDA's action. FDA's experience with such proceedings suggests that it would take two to three years to complete. We recognize that such a timeframe would likely not be useful to the Court in resolving the current case.

Second, priority food safety and applied nutrition matters are currently fully occupying the resources that FDA has available for public proceedings on foods matters. For example, the agency is involved in taking actions designed to improve (1) the safety of the food supply and (2) the dietary practices of Americans, because many of the underlying causes of chronic disease – high blood pressure, elevated cholesterol, obesity and diabetes – are the result of lifestyle factors, including unhealthy eating, and are largely preventable. Proceedings to define "natural" do not fit within these current priorities. *See* 21 C.F.R. § 10.25(c).

Consumers currently receive some protection in the absence of a definition of "natural" because the Federal Food, Drug, and Cosmetic Act and FDA's implementing regulations require that all ingredients used in a food be declared on the food's label. Thus, the label provides consumers with information to decide whether to purchase the food. So, for the food product at issue in the above-captioned case, the consumer would know from the label whether the product contained HFCS.

Page 2 – The Honorable Jerome B. Simandle

The most relevant statement of the agency's views is provided by the preamble language cited by the Court on page 6 of its June 15, 2010 opinion. The FDA there reiterated its interpretation that "natural" means nothing artificial or synthetic. This interpretation was not established by regulation but it is the most definitive statement of the agency's view. By contrast, Geraldine June's letter, which the Court cited on page 7 of its June 15, 2010 opinion, is an informal communication and does not provide a binding agency interpretation for the Court to follow. The opinions of individual employees do not bind the agency, and FDA has made clear that only the Commissioner can speak definitively for the agency. *See* 21 C.F.R. § 10.85(k); *see also Western Ill. Home Health Care v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998) (agency action not final if only the ruling of subordinate official); *Regenerative Sciences v. FDA*, No. 09-cv-00411, 2010 WL 1258010, at *7 (D. Colo. March 26, 2010) (finding that statements of lower level FDA officials do not rise to level of agency action even when contained in regulatory correspondence); *Genendo Pharmaceutical v. Thompson*, 308 F. Supp.2d 881, 885 (N.D. Ill. 2003) (statements of FDA officials in warning letter do not constitute final agency action).

We hope that this information is helpful to you.

Respectfully,

*Michael M. Landa*

Michael M. Landa
Acting Director
Center for Food Safety
  and Applied Nutrition

cc:
Counsel for Plaintiff
Daniel R. Lapinski, Esq.
Wilentz, Goldman & Spitzer, PC
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07905

Counsel for Defendants
Robert P. Donovan, Esq.
McElroy, Deutsch, Mulvaney & Carpenter LLP
100 Mulberry Street
Newark, NJ 07102

# EXHIBIT

# 2



LOW CHOLESTEROL

## Nutrition Facts
Serving Size 55 Pieces (30g /1.1oz)
Servings Per Container About 6

**Amount Per Serving**

**Calories** 140  Calories from Fat 45

% Daily Value*

| | |
|---|---|
| **Total Fat** 5g | 8% |
| Saturated Fat 1g | 5% |
| Trans Fat 0g | |
| Polyunsaturated Fat 1.5g | |
| Monounsaturated Fat 2.5g | |
| **Cholesterol** Less than 5mg | 1% |
| **Sodium** 250mg | 10% |
| **Total Carbohydrate** 20g | 7% |
| Dietary Fiber Less than 1g | 3% |
| Sugars Less than 1g | |
| **Protein** 4g | |

| | | | |
|---|---|---|---|
| Vitamin A | 0% | • Vitamin C | 0% |
| Calcium | 4% | • Iron | 2% |

*Percent Daily Values are based on a 2,000
calorie diet. Your daily values may be higher
or lower depending on your calorie needs:

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

MADE WITH SMILES AND UNBLEACHED ENRICHED WHEAT FLOUR
(FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE
[VITAMIN B1], RIBOFLAVIN [VITAMIN B2], FOLIC ACID), CHEDDAR
CHEESE (CULTURED MILK, SALT, ENZYMES, ANNATTO),
VEGETABLE OILS (CANOLA, SUNFLOWER AND/OR SOYBEAN),
CONTAINS 2 PERCENT OR LESS OF: SALT, YEAST, SUGAR,
AUTOLYZED YEAST, SPICES, LEAVENING (MONOCALCIUM
PHOSPHATE, AMMONIUM BICARBONATE, BAKING SODA) AND
DEHYDRATED ONIONS.
PEPPERIDGE FARM, INCORPORATED, NORWALK, CT 06856
BAKED IN U.S.A.

Cheddar

SELL BY
12-30-12
RU3N225V
03.50

PEPPERIDGE FARM

## Goldfish.
BAKED SNACK CRACKERS

Cheddar
BAKED WITH REAL CHEESE

Natural
NO ARTIFICIAL
PRESERVATIVES
0g Trans Fat

NET WT 6.6 OZ (187g)

LABELS FOR
EDUCATION

Goldfish

# EXHIBIT

# 3

