**MORRISON & FOERSTER LLP**
WILLIAM L. STERN (CA SBN 96105)
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile:  (415) 268-7522
wstern@mofo.com

**FAEGRE BAKER DANIELS LLP**
SARAH L. BREW, *pro hac vice forthcoming*
STEVEN B. TOENISKOETTER (CA SBN 248115)
90 South Seventh Street, Suite 2200
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Facsimile:  (612) 766-1600
sarah.brew@FaegreBD.com
steve.toeniskoetter@FaegreBD.com

**FAEGRE BAKER DANIELS LLP**
DANIEL D. WILLIAMS, *pro hac vice*
1470 Walnut Street, Suite 300
Boulder, Colorado 80302
Telephone: (303) 447-7700
Facsimile:  (303) 447-7800
dan.williams@FaegreBD.com

Attorneys for Pepperidge Farm, Incorporated

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| GARETT KOEHLER, as an individual, and on behalf of all others similarly situated, | ) CASE NO. 13-CV-2644-YGR |
| | ) |
| Plaintiff, | ) **NOTICE OF MOTION AND MOTION AND** |
| | ) **MEMORANDUM OF POINTS AND** |
| v. | ) **AUTHORITIES IN SUPPORT OF** |
| | ) **DEFENDANT PEPPERIDGE FARM,** |
| PEPPERIDGE FARM, INC., a Connecticut corporation, and DOES 1 to 100, inclusive, | ) **INCORPORATED'S MOTION TO** |
| | ) **DISMISS, STAY, OR TRANSFER** |
| | ) **PROCEEDINGS** |
| Defendant. | ) |
| | ) Hearing:     August 27, 2013 |
| | ) Time:         2:00 p.m. |
| | ) Judge:        Hon. Yvonne Gonzalez Rogers |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**NOTICE OF MOTION AND MOTION**

**TO:**   PLAINTIFF AND HIS ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on August 27 at 2:00 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Yvonne Gonzalez Rogers, United States District Judge, Northern District of California, located at 1301 Clay Street, Oakland, California, Defendant Pepperidge Farm, Incorporated will move, and hereby does move, to dismiss this action, or in the alternative stay this action, on grounds of comity, pending resolution of the first-filed action *Bolerjack v. Pepperidge Farm Incorporated*, Case No. 12-2918 (D. Colo.), or alternatively, to transfer the action to the District of Colorado in the Court's discretion based on the first-to-file rule or 28 U.S.C. § 1404(a).

This motion is based on this Notice of Motion and Motion, Defendant's supporting Memorandum of Points and Authorities (attached), and the Court records and files in this Action.

Respectfully submitted,

Dated:  July 9, 2013                                   /s/ William L. Stern
                                                                Sarah L. Brew, *pro hac vice forthcoming*
                                                                Steven B. Toeniskoetter, SBN # 248115
                                                                FAEGRE BAKER DANIELS LLP
                                                                90 South Seventh Street, Suite 2200
                                                                Minneapolis, MN  55402-3901
                                                                Telephone: (612) 766-7000
                                                                Facsimile:  (612) 766-1600
                                                                sarah.brew@FaegreBD.com
                                                                steve.toeniskoetter@FaegreBD.com

                                                                Daniel D. Williams, *pro hac vice*
                                                                FAEGRE BAKER DANIELS LLP
                                                                1470 Walnut Street, Suite 300
                                                                Boulder, Colorado 80302
                                                                Telephone: (303) 447-7700
                                                                Facsimile:  (303) 447-7800
                                                                dan.williams@FaegreBD.com

                                                                and

                                                                William L. Stern, SBN # 96105
                                                                MORRISON & FOERSTER LLP
                                                                425 Market Street
                                                                San Francisco, CA  94105-2482
                                                                Telephone: (415) 268-7000

Facsimile:  (415) 268-7522
wstern@mofo.com

*Attorneys for Defendant*
*Pepperidge Farm, Incorporated*

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................. 1

INTRODUCTION ........................................................................................................................ 2

BACKGROUND .......................................................................................................................... 2

      I.     *Bolerjack* Was the First-Filed Case and Is Proceeding Quickly and Efficiently. ...................................................................................................... 2

      II.    Plaintiff's Counsel Subsequently Filed the Copycat *Koehler* Case. .................... 3

      III.   The *Bolerjack* and *Koehler* Cases Are Nearly Identical. ..................................... 3

      IV.   The Two Proposed Classes Overlap. ...................................................................... 5

ARGUMENT ................................................................................................................................ 5

      I.     THE COURT SHOULD DISMISS, STAY, OR TRANSFER THIS CASE PURSUANT TO THE FIRST-TO-FILE RULE ................................................... 5

           A.    Legal Standard Governing First-to-File Rule .......................................... 6

           B.    Chronology of the Actions Favors Dismissal, Stay, or Transfer. ............. 6

           C.    Similarity of the Parties Favors Dismissal, Stay, or Transfer ................. 7

           D.    Similarity of the Issues Favors Dismissal, Stay, or Transfer .................. 8

           E.    If the Court Does Not Dismiss This Action, It Should Stay the Case Pending Resolution of *Bolerjack* or Transfer the Case to the District of Colorado. ............................................................................................. 10

      II.    ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF COLORADO PURSUANT TO 28 U.S.C. § 1404(a) ...... 12

           A.    28 U.S.C. § 1404(a) Standard for Transfer of Venue ............................. 12

           B.    This Action Could Have Been Brought in the District of Colorado ...... 12

           C.    Transfer Is in the Interests of Convenience and Justice ......................... 13

CONCLUSION .......................................................................................................................... 16

**Page(s)**

**FEDERAL CASES**

*Alibaba.com, Inc. v. Litecubes, Inc.*,
No. C 03-5574 MHP, 2004 WL 443712 (N.D. Cal. Mar. 8, 2004) ........................................... 6

*Alioto v. Hoiles*,
No. C 04-1395, 2004 WL 2326367 (N.D. Cal. Oct. 12, 2004) ................................................. 6

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir. 1991) ........................................................................................... 10, 6

*Audio Entertainment Network, Inc. v. American Telephone & Telegraph Co.*,
205 F.3d 1350, 1999 WL 1269329 (9th Cir. Dec. 29, 1999) .................................................... 7

*Bolerjack v. Pepperidge Farm, Inc.*,
No. 12-cv-02918-PAB-BNB (D. Colo.) ......................................... 2, 3, 4, 5, 6, 7, 8, 10, 11, 12

*Catanese v. Unilever*,
774 F. Supp. 2d 684 (D. N.J. 2011) ......................................................................... 8, 9, 14, 16

*Centocor, Inc. v. MedImmune, Inc.*,
No. C 02-03252, 2002 WL 31465299 (N.D. Cal. Oct. 22, 2002) ............................................ 8

*Church of Scientology of Cal v. U.S. Dep't of the Army*,
611 F.2d 738 (9th Cir. 1979) ................................................................................................. 6

*Cluck v. Ikon Office Solutions, Inc.*,
No. C 1-05027 JSW, 2012 U.S. Dist. LEXIS 64559 (N.D. Cal. May 8, 2012) ...................... 15

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ............................................................................................... 10

*Cohen Group v. Herman Miller, Inc.*,
No. C 05-4467 SI, 2006 U.S. Dist. LEXIS 2301 (N.D. Cal. Jan. 19, 2006) ........................... 9

*Compliance Marketing, Inc. v. Drugtest, Inc. d/b/a DISA Inc.*,
No. 09-cv-01241-JLK, 2010 WL 1416823 (D. Colo. Apr. 7, 2010) ...................................... 9

*Elecs. For Imaging, Inc. v. Tesseron, Ltd.*,
No. C 07-05534 CRB, 2008 U.S. Dist. LEXIS 10844 (N.D. Cal. Jan. 29, 2008) .................. 15

*Gen-Probe, Inc. v. Amoco Corp.*,
926 F. Supp. 948 (S.D. Cal. 1996) ...................................................................................... 10

*Georgouses v. NaTec Resources, Inc.*,
963 F. Supp. 728 (N.D. Ill. 1997) ........................................................................................ 14

*Gerin v. Aegon USA, Inc.*,
No. C 06-5407, 2007 WL 1033472 (N.D. Cal. April 4, 2007) .............................................. 13

*Hoffman v. Blaski*,
    363 U.S. 335 (1960) ............................................................................................................ 12

*Inherent.com v. Martindale-Hubbell*,
    420 F. Supp. 2d 1093 (N.D. Cal. 2006) ........................................................................... 5, 12

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
    544 F. Supp. 2d 949 (N.D. Cal. 2008) ....................................................................... 6, 7, 8, 10

*Jolly v. Purdue Pharma L.P.*,
    No. 05-cv-1452, 2005 WL 2439197 (S.D. Cal. Sept. 28, 2005) ........................................... 15

*Jones v. GNC Franchising*,
    2011 F.3d 495 (9th Cir. 2000) ............................................................................................. 13

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................................................................................ 10

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ............................................................................................... 13

*Nakash v. Marciano*,
    882 F.2d 1411 (9th Cir. 1989) .............................................................................................. 6

*Nat'l Union Fire Ins. Co. v. Payless Shoesource, Inc.*,
    No. C-11-1892 EMC, 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) .................................... 6, 8

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ............................................................................................... 5, 9

*Papaleo v. Cingular Wireless Corp.*,
    No. 07-cv-1234, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) ............................................ 14

*Peak v. Green Tree Fin. Servicing Corp.*,
    No. C 00-0953 SC, 2000 WL 973685 (N.D. Cal. July 7, 2000) .............................................. 7

*Persepolis Enterprise v. United Parcel Service, Inc.*,
    No. C 07-02379 SC, 2007 WL 2669901 (N.D. Cal. Sept. 7, 2007) ...................................... 7, 9

*Red v. Unilever United States, Inc.*,
    No. 09-0855 (C.D. Cal. Jan. 25, 2010) ................................................................................. 9

*Ross v. U.S. Bank Nat'l Ass'n*,
    542 F. Supp. 2d 1014 (N.D. Cal. 2008) ................................................................................ 7

*Saleh v. Titan Corp.*,
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) .......................................................................... 14, 15

*Schwartz v. Frito-Lay North America*,
    No. C 12-02740, 2012 WL 8147135 (N.D. Cal. Sept. 12, 2012) ................................. 6, 11, 13

*Sec. Investor Prot. Corp. v. Vigman*,
    764 F.2d 1309 (9th Cir. 1985)......................................................................................... 13

*St. Helena Wine Co. v Allied Mgmt.*,
    No. C 98-1683 MJJ, 1998 U.S. Dist. LEXIS 12558 (N.D. Cal. Aug. 10, 1998)..................... 11

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ....................................................................................................... 15

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ..................................................................................................... 12

*VISX, Inc. v. Garabet*,
    No. C 00-3633 CRB, 2000 WL 1929328 (N.D. Cal. Dec. 18, 2000)................................... 6, 8

*Walker v. Progressive Cas. Ins. Co.*,
    No. C03-656R, 2003 WL 21056704 (W.D. Wash. May 9, 2003)............................................ 8

*Xoxide, Inc. v. Ford Motor Co.*,
    448 F. Supp. 2d 1188 (C.D. Cal. 2006) ............................................................................ 10

**FEDERAL STATUTES**

28 U.S.C. § 1332(d)(2)(C) ................................................................................................ 13

28 U.S.C. § 1391(b)(1) .................................................................................................... 13

28 U.S.C. § 1391(b)(2) .................................................................................................... 13

28 U.S.C. § 1391(c)(2) ..................................................................................................... 13

28 U.S.C. § 1404(a) ........................................................................ 1, 2, 11, 12, 13, 14, 15, 16

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200, *et seq.*............................................................................ 4

Cal. Bus. & Prof. Code §§ 17500, *et seq.*............................................................................ 4

Cal. Civ. Code § 1750, *et seq.* ............................................................................................ 4

Colo. Rev. Stat. § 6-1-105, *et seq.* ...................................................................................... 4

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................... 2

Fed. R. Civ. P. 42 .............................................................................................................. 12

1

**STATEMENT OF THE ISSUES TO BE DECIDED**

2

This motion raises the following issues:

3
4
5

1.   **First-to-File Rule.**  Should the Court dismiss, stay, or transfer this action under the first-to-file rule where a parallel, previously-filed case with substantially similar issues and parties is pending in the District of Colorado?

6
7
8

2.   **Transfer.**  Alternatively, should the Court transfer this case to the District of Colorado pursuant to 28 U.S.C. § 1404(a), in the interests of justice and convenience?

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This is a copycat class action that trails by seven months a case filed in the District of Colorado named *Bolerjack v. Pepperidge Farm, Inc.*, No. 12-cv-02918-PAB-BNB (D. Colo.) (Brimmer, J.).  The two cases are almost identical in their allegations and essential claims.  They are brought by the same lead plaintiffs' counsel, and the lead plaintiffs in each of these cases seek to represent overlapping classes under Fed. R. Civ. P. 23.  *Bolerjack* is a putative nationwide class action already deep into discovery, with multiple rulings from the court on discovery motions and continuous negotiations regarding e-discovery.  Where parallel litigation is pending in two different districts, the second-filed action ordinarily should be dismissed, stayed, or transferred if the parties and the issues are substantially similar.

Applying the first to file rule, the Court should dismiss this case.  If the Court is disinclined to dismiss this action outright, it should stay all further proceedings pending resolution of the first-filed *Bolerjack* action, or transfer it to the District of Colorado.  Alternatively, if this Court declines to apply the first-to-file rule, it should still transfer the case to the District of Colorado, exercising its discretion to do so under 28 U.S.C. § 1404(a).

### BACKGROUND

**I.   *Bolerjack* Was the First-Filed Case and Is Proceeding Quickly and Efficiently.**

Plaintiff's counsel filed suit against Pepperidge Farm, Incorporated ("PFI") on November 6, 2012 in the District of Colorado.  (*See* **Exhibit A**, Bolerjack Class Action Complaint ("*Bolerjack* Compl.").)  Ms. Bolerjack alleges that the "natural" label statement on Defendant's Goldfish crackers was deceptive because the products allegedly contain Genetically Modified Organisms ("GMOs") and, specifically, GMO soy.  Based on this, she demands a refund and seeks to represent a nationwide class of Goldfish consumers.

*Bolerjack* is in the midst of comprehensive discovery and is progressing quickly toward a November 30, 2013 deadline for Ms. Bolerjack's class certification motion.  The same lawyers representing the parties in this case were able to negotiate a Stipulated Scheduling Order governing all pretrial discovery and proceedings for the *Bolerjack* case.  (**Exhibit B**, Scheduling Order).  The

court in *Bolerjack* issued a Confidentiality Order governing production and use of confidential business documents, and has ruled on multiple subsequent discovery motions, including a motion to compel and motions for protective order.  The court has imposed deadlines for completion of fact and expert discovery, briefing on class certification, and dispositive motion briefing.  The parties are hard at work with respect to written discovery and depositions, and with input from the court at a discovery hearing on June 6, 2013, are currently completing negotiations regarding a comprehensive e-discovery protocol that will govern collection and production of PFI's electronic documents concerning the "Natural" claim on its Goldfish product and its alleged use of GMO soy.  The court is strictly managing this discovery process, and at the June 2013 hearing, advised the parties that it will not entertain motions to extend discovery deadlines.  That means it is highly likely the parties will be required to meet the current deadlines of November 30, 2013 for the plaintiff's class certification motion and March 28, 2014 for dispositive motions.

## II.   Plaintiff's Counsel Subsequently Filed the Copycat *Koehler* Case.

Plaintiff filed the instant action against PFI on June 10, 2013 in the Northern District of California.  This action is the product of forum shopping.  Facing looming deadlines and other challenges to the merits of their case in Colorado, Plaintiff's counsel decided to try their hand in a new forum that they believe might be more hospitable to food labeling actions.

## III.  The *Bolerjack* and *Koehler* Cases Are Nearly Identical.

This case is virtually identical to *Bolerjack*.  Both cases are styled as class actions.  Both name the same defendant, PFI.  Both allege that PFI markets, advertises, sells and distributes Goldfish crackers with the same "Natural" claim and that this claim is deceptive because Goldfish crackers allegedly contain genetically modified organisms or "GMOs" and, specifically, GMO soy. (*Bolerjack* Compl. ¶ 1, *Koehler* Compl. ¶¶ 1-2.)

In this case, the proposed lead class plaintiff, Garett Koehler, is a consumer who alleges he purchased Goldfish crackers.  He filed this as a "class action to stop Pepperidge Farm from including genetically modified ingredients" in its Goldfish crackers or from representing the products as "Natural," while seeking "to recover damages and restitution for Plaintiff and the

class."[1]   (*See* Class Action Complaint for Violations of Consumer Legal Remedies Act, Etc., ¶ 3 ("*Koehler* Compl.").)   Plaintiff's Complaint alleges that PFI misrepresented Goldfish crackers as "Natural" when they allegedly contain GMOs.   (*Id.* at 2.)   Plaintiff pleads four causes of action, all under California's statutory consumer-protection laws: violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, violations of California's unfair competition law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and false advertising in violation of California's false advertising law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

The *Bolerjack* case raises the same issues.   Like Koehler, the proposed lead class plaintiff there, Sonya Bolerjack, is a consumer who claims to have purchased PFI's Goldfish products.   She also alleges that PFI "made false, misleading statements" that its Cheddar Goldfish crackers are "Natural," "when in fact, they are not, because they contain GMOs in the form of soy and/or soy derivatives."   (*Bolerjack* Compl. ¶ 1.)   She also seeks to recover restitution and to enjoin PFI "from making any claims for the Products" that violate Colorado's equivalent consumer protection law to California's, the Colorado Consumer Protection Act ("CCPA").   (*Id.* pp. 14-15.)   Her complaint pleads three causes of action: violations of the CCPA, Colo. Rev. Stat. § 6-1-105, *et seq.*, breach of express warranty, and negligent misrepresentation.

The gravamen of both Complaints is the same.   Both accuse PFI of making the false and misleading statement that its Goldfish crackers are "Natural" when they allegedly contain GMOs in the form of soy.   (*Bolerjack* Compl. ¶ 1, *Koehler* Compl. ¶¶ 1-2.)   Both claim that GMOs are not "Natural" because they are plants that grow from seeds that "have been modified in a laboratory through the genetic modification process" and in which "DNA splicing has been used to place genes from another source into a plant."   (*Bolerjack* Compl. ¶¶ 17-18, *Koehler* Compl. ¶¶ 19-20.)   Both seek to certify a class of purchasers of Goldfish containing soy, regardless of whether the purchaser read or relied upon a "Natural" claim.   (*Bolerjack* Compl. ¶ 44, *Koehler* Compl. ¶ 54.)   Both sue for violations of state consumer protection and unfair/unlawful business practices statutes.   (*Bolerjack* Compl. ¶¶ 58-69, *Koehler* Compl. ¶¶ 62-101.)   Both seek actual damages, as well as an

---

[1] When the *Bolerjack* case was filed on November 6, 2012, PFI already had begun implementing new Goldfish packaging, which included removing the "Natural" language for reasons unrelated to "GMOs."   This fact was known to Plaintiff's counsel at the time he filed the *Koehler* action.

1   order enjoining PFI from making the "Natural" claim discussed in the complaints.   (*Bolerjack*

2   Compl. pp. 14-15; *Koehler* Compl. pp. 24-45.)  Indeed, Plaintiff admits there is nothing California-

3   specific about PFI's packaging or product labels – he contends that "Defendant's false and

4   misleading labeling practices stem from its **global** marketing strategy."   (*Koehler Compl.* ¶ 50

5   (emphasis added).)

6   **IV.     The Two Proposed Classes Overlap.**

7          The class sought in this case consists of, "All California persons who have purchased, for

8   personal use, Pepperidge Farm's Goldfish crackers that contain genetically modified soy since June

9   2009."  (*Koehler* Compl. ¶ 54.)   Most of this class is merely a proposed sub-class of the class

10  proposed in the *Bolerjack* action: "all United States persons who have purchased Pepperidge Farm

11  Cheddar Goldfish crackers containing Soybean Oil, for personal use, during the period extending

12  from October 22, 2008, through and to the filing date of this Complaint."

13         Koehler, who alleges that he purchased Cheddar Goldfish, seeks to represent a class

14  including purchasers of other flavors of Goldfish as well as Cheddar, while Bolerjack's proposed

15  class definition currently includes only Cheddar.  Because Cheddar is by far the most popular

16  Goldfish flavor, this amounts to a relatively small difference in scope between the two proposed

17  classes.  Nor would it be expected to impact the factual dispute central to Plaintiff's claim—that

18  the alleged use of GMO soy renders the identical "Natural" claim on Goldfish packages false or

19  misleading.

                                        **ARGUMENT**

20  **I.      THE COURT SHOULD DISMISS, STAY, OR TRANSFER THIS CASE PURSUANT
21           TO THE FIRST-TO-FILE RULE.**

22         As explained above, *Bolerjack*, which is a previously-filed parallel action, is substantially

23  similar to this case.  Federal comity permits a district court to decline jurisdiction over an action

24  when a complaint involving the same parties and issues has already been filed in another district.

25  *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006).  This is known

26  as the first-to-file rule.  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).

27

28

### A.  Legal Standard Governing First-to-File Rule.

"Absent an exception to the first-to-file rule, a court of second-filing will defer to a court of first-filing" if the two matters are duplicative.  *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 957 (N.D. Cal. 2008).  The first-to-file rule "is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology of Cal v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).  The rule should not be "disregarded lightly," because it "serves the purpose of promoting efficiency well." *Id.*  "Comity works most efficiently where previously-filed litigation is brought promptly to the attention of the district court, and the court defers." *Id.*  "Exact parallelism between the two actions need not exist; it is enough if the parties and issues in the two actions are 'substantially similar.'" *Alioto v. Hoiles*, No. C 04-1395, 2004 WL 2326367, at *5 (N.D. Cal. Oct. 12, 2004) (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)); *see also Nat'l Union Fire Ins. Co. v. Payless Shoesource, Inc.*, No. C-11-1892 EMC, 2012 WL 3277222, at *13 (N.D. Cal. Aug. 9, 2012) (finding similarity where the "central question" in each suit was the same).

The court considers three factors in determining whether to dismiss, stay, or transfer under the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues.  *Alltrade*, 946 F.2d at 625-26.  When, as here, each of these factors is present, the second-filed action should be dismissed, stayed, or transferred.  *See, e.g., VISX, Inc. v. Garabet*, No. C 00-3633 CRB, 2000 WL 1929328, at *2, *4 (N.D. Cal. Dec. 18, 2000) (dismissal); *Alibaba.com, Inc. v. Litecubes, Inc.*, No. C 03-5574 MHP, 2004 WL 443712, at *2-3 (N.D. Cal. Mar. 8, 2004) (stay); *Schwartz v. Frito-Lay North America*, No. C 12-02740, 2012 WL 8147135, at *4 (N.D. Cal. Sept. 12, 2012) (transfer).

### B.  Chronology of the Actions Favors Dismissal, Stay, or Transfer.

There is no question that this case is the second-filed action.  *Bolerjack* was filed on November 6, 2012, and is progressing with an aggressive discovery and class certification schedule in the District of Colorado.

### C.       Similarity of the Parties Favors Dismissal, Stay, or Transfer.

The second factor, similarity of parties, also favors application of the first-to-file rule because (1) PFI is the defendant in both cases; and (2) the classes overlap.   Courts in the Ninth Circuit have adopted a flexible approach in evaluating the similarity of the parties.   *See, e.g.*, *Intersearch Worldwide*, 544 F. Supp. 2d at 959 n.6 ("[E]xact identity is not required to satisfy the first-to-file rule.   The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties . . .."); *Audio Entertainment Network, Inc. v. American Telephone & Telegraph Co.*, 205 F.3d 1350 (Table), 1999 WL 1269329, at *1 (9th Cir. Dec. 29, 1999) (not finding an abuse of discretion when a federal court defers to another federal court even if the parties or issues are not identical if substantially similar).   While the two complaints name different proposed class representatives, the distinction is without a difference.   Both are alleged to be "typical" of the class they seek to represent, and each claims that a similar list of legal and factual questions are "common" to themselves and absent class members. (*Compare Bolerjack* Compl. ¶¶ 49-50, *Koehler* Compl. ¶¶ 57-58.)

In class actions, courts look to the similarity of the ***class*** rather than the similarity of the ***class representatives***.   *See, e.g., Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) ("In a class action, the classes, and not the class representatives, are compared"); *Persepolis Enterprise v. United Parcel Service, Inc.*, No. C 07-02379 SC, 2007 WL 2669901, at *2 (N.D. Cal. Sept. 7, 2007) ("The first-to-file rule requires the court in a class action suit to compare the proposed classes, not their representatives.")   Here, the putative class representatives are different, but the putative classes substantially overlap, with the California class largely comprised of a proposed subclass of that pleaded in *Bolerjack*.   In fact, the *Bolerjack* class subsumes the entire *Koehler* California-only class for the by-far best-selling Goldfish product – Cheddar Goldfish.

Koehler himself proves this point.   Koehler alleges he bought Cheddar Goldfish. (*Koehler Compl. ¶* 9 & Exs. 2-3.)   If a nationwide class were certified in *Bolerjack*, the named plaintiff in this case, Koehler, would be included in that parallel national class.   This Court has previously applied the first-to-file rule to parallel class actions with different named plaintiffs. *See, e.g., Peak*

1    *v. Green Tree Fin. Servicing Corp.*, No. C 00-0953 SC, 2000 WL 973685, at \*2-3 (N.D. Cal.

2    July 7, 2000) (dismissing second-filed action where the "underlying objectives of the first to file

3    rule [would] be achieved by its application despite different named plaintiffs"); *see also Catanese*

4    *v. Unilever*, 774 F. Supp. 2d 684, 688 (D. N.J. 2011) ("This Court cannot allow a parallel action to

5    proceed which involves putative absent class members from an earlier-filed class action.").   The

6    identities of parties in the two actions counsels in favor of application of the first-to-file rule.

7                    **D.     Similarity of the Issues Favors Dismissal, Stay, or Transfer.**

8            The third factor, similarity of the issues, likewise favors application of the first-to-file rule.

9    "[S]light differences in the claims asserted do not prevent application of the rule where the

10   underlying complained-of product is almost identical."   *Walker v. Progressive Cas. Ins. Co.*, No.

11   C03-656R, 2003 WL 21056704, at \*3 (W.D. Wash. May 9, 2003); *see also Centocor, Inc. v.*

12   *MedImmune, Inc.*, No. C 02-03252, 2002 WL 31465299, at \*3 (N.D. Cal. Oct. 22, 2002) (first-to-

13   file rule does not require identical issues or parties "so long as the actions involve closely related

14   questions or common subject matter").   The key inquiry is whether the two cases share the same

15   "key dispute."   *Nat'l Union Fire Ins.*, 2012 WL 3277222, at \*3.   When, as here, the key dispute in

16   the two actions is so similar, dismissal, stay, or transfer of the second case is appropriate.

17   *Intersearch Worldwide*, 544 F. Supp. 2d at 962; *VISX*, 2000 WL 1929328.

18           Both the California and the Colorado actions raise the same core issue – whether the

19   "Natural" label on PFI's Goldfish packages is misleading based on the allegation that the product

20   contains soybean oil derived from GMO soy.   Both cases assert claims under the states' respective

21   consumer protection statutes.   Indeed, the list of common questions for class certification includes

22   identical language with regard to the very first question presented in each case:   "whether

23   Defendant's practices and representations related to the marketing, labeling and sales of the

24   Product[s] … were unfair, deceptive and/or unlawful in any respect" (*Koehler* Compl. ¶ 57(a);

25   *Bolerjack* Compl. ¶ 49(a).)   Other questions Koehler himself presents as central to his case clearly

26   go to the heart of both actions, including: "Whether the Products are 'Natural'" (*Koehler* Compl.

27   ¶ 57(d)); whether the "Natural" claim "is material to a reasonable consumer" (*Id.* at ¶ 57(f)); and

28   whether PFI "was unjustly enriched by its [allegedly] deceptive practices" (*Id.* at ¶ 57(i)).

The differences in the causes of action under California and Colorado law do not change the analysis.  Plaintiffs in both cases challenge the same actions taken by PFI, using the same language, under state consumer protection statutes.  This is all the first-to-file rule requires; it is not necessary that exactly parallel causes of action be pleaded.  *See Catanese*, 774 F. Supp. 2d at 689 (fact that actions sought to apply different state laws was "insufficiently material" to prevent application of the first-to-file rule); *Pacesetter,* 678 F.2d at 95 (comparing the issues raised in the two actions rather than the claims asserted); *see also Cohen Group v. Herman Miller, Inc.*, No. C 05-4467 SI, 2006 U.S. Dist. LEXIS 2301, at *9 (N.D. Cal. Jan. 19, 2006) (crucial inquiry is whether the "issues substantially overlap", not the causes of action).  Moreover, district courts and juries are perfectly capable of applying out-of-state law, and the District of Colorado in particular is familiar with California's consumer protection statutes.  *See Compliance Marketing, Inc. v. Drugtest, Inc. d/b/a DISA Inc.*, No. 09-cv-01241-JLK, 2010 WL 1416823, at *17 (D. Colo. Apr. 7, 2010) (analyzing claim under California's UCL).

Nor do the slight differences in class definitions prevent application of the first-to-file rule.  *See Persepolis*, 2007 WL 2669901, at *2 (where first-filed action asserted nationwide class and second-filed action asserted worldwide class action, transfer of second-filed action appropriate under the first-to-file rule where issues are substantially similar).  Indeed, the first-to-file rule applies even where the second action asserts a nationwide class and the first action is state only, the inverse of this case.  *Red v. Unilever United States, Inc.*, No. 09-0855 (C.D. Cal. Jan. 25, 2010).

The defenses to the two cases are identical as well.  It would be a waste of judicial resources and risk inconsistent outcomes for different courts to address motions opposing class certification and motions for summary judgment in both cases.  The risk of inconsistent rulings would multiply with every proceeding, from discovery to class certification, from summary judgment to trial.  All parties will benefit from the elimination of duplicitous discovery if these cases are litigated in the same district.  *Id.*  Applying the first-to-file rule, this Court should dismiss this second-filed suit, stay it, or transfer it to the District of Colorado.

**E.     If the Court Does Not Dismiss This Action, It Should Stay the Case Pending Resolution of _Bolerjack_ or Transfer the Case to the District of Colorado.**

When applying the first-to-file rule, courts frequently dismiss the second-filed action in favor of the first-filed action. *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006); *see also Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). Dismissal is particularly appropriate in a case such as this one, where there are no concerns regarding availability of remedies or jurisdiction in the first court. *Intersearch Worldwide*, 544 F. Supp. 2d at 963. Courts also consider the pace of the two cases, and where the first-filed case has proceeded beyond the second-filed case, the second case should be dismissed for the sake of judicial economy. *Id.* Such is the case here, and dismissal is the appropriate remedy.

If the Court decides not to dismiss this action, it should stay the case until *Bolerjack* is resolved, or alternatively should transfer the case to the District of Colorado. A district court has the inherent power to control and manage its docket, including by staying the proceedings before it. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). When determining whether to grant a stay, the district court should consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citations omitted). These factors clearly favor staying these proceedings.

First, a stay of this action will promote judicial efficiency by preventing the Court and the parties from unnecessarily expending limited resources. Resolution of *Bolerjack* will likely resolve the legal and factual issues raised by this action. There is no need for two federal courts to tackle these issues simultaneously. Permitting this case to go forward would impede the orderly course of justice.

Second, if this action proceeds without a stay, there will be a substantial burden on PFI because it will be forced to incur costs to litigate the same issue in multiple jurisdictions. *See Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 964 (S.D. Cal. 1996) (granting stay after considering the "massive costs" that proceeding with litigation would entail for the parties and the

1    court).  It would be inefficient to invest time and resources in this action before the resolution of

2    *Bolerjack*.

3         Third, a stay will not prejudice Plaintiff.  No substantive proceedings have taken place in

4    this lawsuit, and Plaintiff is a class member of the proposed *Bolerjack* class.

5         Alternatively, the Court should transfer the case to the District of Colorado under the first-

6    to-file rule.  In a similar case, *Schwartz v. Frito-Lay North America*, also a consumer class action

7    challenging a "Natural" claim based on the alleged presence of "GMOs," this Court granted the

8    defendant's motion to transfer the case to the venue of the first-filed action, the Eastern District of

9    New York.  2012 WL 8147135, at *1.  The plaintiff in *Schwartz* was a consumer who claimed to

10   have purchased Frito-Lay bean dip in reliance on the "All Natural" label.[2]  Transfer was

11   appropriate for many reasons.  First, the parties were "effectively the same" because each set of

12   plaintiffs sought relief on behalf of a class.  *Id.* at *3.  Second, the issues were "substantially

13   similar" because each complaint alleged that the "All-Natural" labeling and marketing of the Frito-

14   Lay products allegedly was misleading because the product "is made from plants grown from

15   genetically modified seed."  *Id.*  In transferring the case, the court highlighted that the first-to-file

16   rule applied even though the second-filed case raised different causes of action, concluding that

17   "the fact that the claims are asserted under different state laws" is not dispositive given the factual

18   similarities between the cases and that the "main claims" in both cases are "closely related."  *Id.*

19   (explaining that to hold otherwise "would defeat the judicial efficiency rationale undergirding the

20   first-filed rule").  So too here.  For the same reasons articulated in *Schwartz*, transfer to the District

21   of Colorado under the first-to-file rule is appropriate in this case.

22        Notably, where another pending action involves substantially similar legal and factual

23   issues, the first-to-file rule supports transfer without reaching other factors traditionally considered

24   under 28 U.S.C. § 1404(a).  *See St. Helena Wine Co. v Allied Mgmt.*, No. C 98-1683 MJJ, 1998

25   U.S. Dist. LEXIS 12558, at *3 n.2 (N.D. Cal. Aug. 10, 1998) (transferring action under comity

26

27   [2] The original complaint also made allegations about various Frito-Lay chips, but after the
     Defendant moved to transfer, Plaintiff's counsel (the same counsel in this matter and in the
28   *Bolerjack* matter) amended the Complaint to omit allegations about chips, which was the focus of
     the first-filed action.  *Schwartz*, 2012 WL 8147135, at *1.

doctrine without reaching section 1404(a) factors.  Permitting this later-filed case to proceed in parallel with *Bolerjack* poses precisely the risks the first-to-file rule is intended to prevent: duplicative litigation, unnecessary use of scarce judicial resources, and inconsistent rulings.  If transferred, this action will be related to *Bolerjack*, and the court will be able to manage the actions and avoid duplicative litigation and inconsistent rulings.  *See* Fed. R. Civ. P. 42.

For these reasons, the first-to-file rule strongly favors dismissal, stay, or transfer.

## II.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF COLORADO PURSUANT TO 28 U.S.C. § 1404(a).

If the Court decides not to apply the first-to-file rule, it should nevertheless transfer this matter to the District of Colorado pursuant to 28 U.S.C. § 1404(a), where it can be managed by the court that has been presiding for eight months over a substantially similar matter.

### A.   28 U.S.C. § 1404(a) Standard for Transfer of Venue.

This Court is authorized to transfer venue of this civil action under the standard set forth in 28 U.S.C. § 1404(a), which provides that "a district court may transfer any civil action to any other district or division where it might have been brought" if it is in the interest of justice and "for the convenience of the parties and witnesses."  28 U.S.C. § 1404(a).  The goal of § 1404(a) "is to prevent waste of time, energy and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Determining the propriety of transferring venue is a two-step inquiry.  First, this Court must determine whether the action originally could have been brought in the transferee district.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Second, the Court must make an "individualized, case-by-case consideration of convenience and fairness."  *Inherent.com*, 420 F. Supp. 2d at 1098.  In making this determination, the burden is on the moving party, and the court is vested with "broad discretion."  *Hoffman*, 363 U.S. at 344.

### B.   This Action Could Have Been Brought in the District of Colorado.

Koehler's Complaint alleges that this Court's subject matter jurisdiction is premised on the federal Class Action Fairness Act ("CAFA").  (Compl. p. 3.)  The "minimal diversity" needed under CAFA requires only that "any member of a class of plaintiffs is a citizen of a State and any

1    defendant is a foreign state or a citizen or subject of foreign state."  28 U.S.C. § 1332(d)(2)(C).

2    Such is the case here, as PFI is a citizen of Connecticut and Koehler is a citizen of California.  In

3    light of the class claim, there is diversity of citizenship.  The amount in controversy is satisfied, as

4    the total value of the aggregated claims is alleged to exceed $5,000,000.

5        Venue is proper in the District of Colorado, because it is a district in which a substantial

6    portion of the "events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).

7    The "events or omissions" concern uniform product labels on Goldfish, which are sold in

8    Colorado, California, and every other state in America.  *See Schwartz*, 2012 WL 8147135, at *4

9    (putative class action involving sale of Fritos easily met the first prong of the § 1404(a) analysis).

10   Colorado is also a district in which PFI resides, providing an alternative basis to find venue proper

11   in Colorado.  *See* 28 U.S.C. § 1391(b)(1).  PFI "resides" in Colorado because, by virtue of selling

12   products there, it "is subject to the Court's personal jurisdiction" in Colorado.   28 U.S.C.

13   § 1391(c)(2).  The first prerequisite for transfer under § 1404(a) is satisfied.

14       **C.    Transfer Is in the Interests of Convenience and Justice.**

15       The Ninth Circuit has enumerated factors that a district court should consider, on a case-by-

16   case basis, in determining whether the interests of justice and convenience favor transfer.  *See Sec.*

17   *Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985).  These factors include (1) the

18   plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of witnesses to the

19   extent that they may be unavailable in one forum; (4) practical considerations that could make the

20   trial easy, expeditious or inexpensive including ease of access to evidence; (5) relative

21   administrative difficulties resulting from court congestion; (6) local interest in deciding a local

22   controversy; (7) familiarity of the district court with applicable state law; and (8) feasibility of

23   consolidation.  *Jones v. GNC Franchising*, 2011 F.3d 495, 498-99 (9th Cir. 2000); *Gerin v. Aegon*

24   *USA, Inc.*, No. C 06-5407, 2007 WL 1033472, at *4 (N.D. Cal. April 4, 2007).

25       With the exception of factor one (plaintiff's choice of forum), all of the factors are either

26   neutral or heavily favor transfer of this action to Colorado.  But significantly, the fact that Plaintiff

27   seeks to represent a class means that his choice of forum receives considerably less deference.  *See,*

28   *e.g.*, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual brings a derivative

suit or represents a class, the named plaintiff's choice of forum is given less weight."); *Catanese*, 774 F. Supp. 2d at 688–89 (D. N.J. 2011) ("Because the subject matter of the respective cases is the same, the interest each plaintiff holds in the forum of its choice does not tip the balance."); *Georgouses v. NaTec Resources, Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) ("[B]ecause plaintiff alleges a class action, plaintiff's home forum is irrelevant."). And even if this were not a putative class action, as a general matter, the plaintiff's choice of forum is no longer given the consideration it once enjoyed under a forum *non conveniens* analysis. *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1156 (S.D. Cal. 2005) (because § 1404(a) involves mere transfer of a case, the plaintiff's choice of forum is not accorded any great significance).

The convenience factors, including (2)-(4), are either neutral or weigh in favor of transfer. Both Plaintiff's and Defendant's counsel in this case already are well down the path of litigating the parallel case in Colorado, with extensive fact discovery completed and more underway. With witnesses already required to appear for trial in Colorado, it would be wholly inconvenient for them to appear additionally in California. The location of the defendant is not California, the witnesses primarily are outside of California, and the location of other evidence in the action is not expected to be in California. Most witnesses in this case will be representatives of PFI or experts, located on the East Coast or elsewhere in the country. Given that they will be required to travel to Colorado in any event, it is more convenient for them not to have to travel additionally to California. Likewise, both Plaintiff's lead law firm and Defendant's lead law firm maintain offices in Colorado, making Colorado a convenient forum for all involved. The convenience factors, therefore, weigh in favor of transfer to the District of Colorado. *Papaleo v. Cingular Wireless Corp.*, No. 07-cv-1234, 2007 WL 1238713, at *2 (N.D. Cal. Apr. 26, 2007) (holding that "transfer would be substantially more convenient for each such witness, because such witnesses would not be required to engage in duplicative litigation or travel to two different forums to attend court proceedings.").

Factors (5) through (8) primarily favor transfer. Administrative difficulties could result from court congestion in the Northern District of California that is not present to the same extent in the District of Colorado. *See* U.S. Courts Caseload Statistics, Table C-5 (median time to resolution

1    of cases 7.3 months in N.D. Cal, 5.3 months in D. Colo.; median time to trial 27.7 months in N.D.

2    Cal, 24.8 months in D. Colo.).[3]   The fact that this is not a localized controversy in which this

3    district has any particular interest also supports transfer under § 1404(a).   *See Saleh*, 361 F. Supp.

4    2d at 1167.   As to factor (7), given the similarity and prevalence of claims under all state consumer

5    protection statutes, there is no reason the District of Colorado could not competently apply the

6    relevant law to the facts of this case.   Factor (8) favors transfer because, given the pending case in

7    the District of Colorado, consolidation is highly feasible.

8            The justice-centered inquiry is the cornerstone of the transfer inquiry, and strongly favors

9    transfer here.   The interests of justice refer to "those public-interest factors of systemic integrity

10   and fairness."   *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).   The most compelling

11   reason for transfer is that there are related proceedings pending in the transferee district.   *Cluck v.*

12   *Ikon Office Solutions, Inc.*, No. C 1-05027 JSW, 2012 U.S. Dist. LEXIS 64559, at *5 (N.D. Cal.

13   May 8, 2012) ("[T]he existence of a similar lawsuit involving an overlapping class of plaintiffs,

14   against the same defendant, over the same time period, with regard to the same or similar legal

15   issues militates in favor of transfer.").   "Litigation of related claims in the same tribunal is strongly

16   favored because it facilitates efficient, economical and expeditious pre-trial proceedings and

17   discovery and avoids duplic[ative] litigation and inconsistent results."   *Jolly v. Purdue Pharma*

18   *L.P.*, No. 05-cv-1452, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005).   Indeed, pendency of

19   similar litigation is sufficient, *by itself*, to compel a transfer.   *See Elecs. For Imaging, Inc. v.*

20   *Tesseron, Ltd.*, No. C 07-05534 CRB, 2008 U.S. Dist. LEXIS 10844, at *3 (N.D. Cal. Jan. 29,

21   2008) ("Consideration of the interest of justice, which includes judicial economy, may be

22   determinative to a particular transfer motion, even if the convenience of the parties and witnesses

23   might call for a different result.") (citation omitted).

24           In sum, conducting this putative class action in one forum will avoid duplicative litigation,

25   thereby benefiting the interests of both convenience and justice.   If both actions continue, PFI

26   would be forced to duplicate large amounts of discovery and documentary evidence in multiple

27

28   ---

[3]   Available at:
http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2012/tables/C05Mar12.pdf#

fora.  In comparison, in this putative class action, transfer would not increase the burden to any substantial extent on the Plaintiff or his counsel.  Indeed, it would be expected to minimize burden, as all counsel would not need to arrange multiple repetitive court appearances to argue similar discovery, class certification, and merits briefing issues, which would be expected to be consolidated if this case is transferred to Colorado.  Plaintiff Koehler's personal involvement with the facts of this case is limited to purchasing Goldfish crackers.  He can expect to have little documentary evidence to contribute.[4]  *See Catanese*, 774 F. Supp. 2d at 689.  Given the minimal California nexus for discovery, and the progress of the Colorado action including active supervision of extensive discovery, transfer is appropriate under § 1404(a).

## CONCLUSION

In the interests of comity, efficiency, and justice the Court should dismiss, stay, or transfer this action under the first-to-file rule.  Alternatively, the Court should transfer the case to the District of Colorado under 28 U.S.C. § 1404(a).

Respectfully submitted,

Dated:  July 9, 2013

/s/ William L. Stern
Sarah L. Brew, *pro hac vice forthcoming*
Steven B. Toeniskoetter, SBN # 248115
FAEGRE BAKER DANIELS LLP
90 South Seventh Street, Suite 2200
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Facsimile:  (612) 766-1600
sarah.brew@FaegreBD.com
steve.toeniskoetter@FaegreBD.com

Daniel D. Williams, *pro hac vice*
FAEGRE BAKER DANIELS LLP
1470 Walnut Street, Suite 300
Boulder, Colorado 80302
Telephone: (303) 447-7700
Facsimile:  (303) 447-7800
dan.williams@FaegreBD.com

---

[4] In *Bolerjack*, Plaintiff has certified to the court that she does not possess a single discoverable document.  *See Bolerjack v. Pepperidge Farm, Inc.*, No. 1:12-cv-02918-PAB-BNB, Dkt. Nos. 61-62.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

and

William L. Stern, SBN # 96105
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile:  (415) 268-7522
wstern@mofo.com

*Attorneys for Defendant*
*Pepperidge Farm, Incorporated*